UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT EARL BAILEY #04077385, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3: 05-CV-0637-B |
| | § | |
| MIKE CANTRELL, DALLAS COUNTY COMMISSIONER, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

In this § 1983 civil rights case Plaintiff Robert Earl Bailey alleges that Defendants provided inadequate medical and dental care during his incarceration at the Dallas County Jail. Before the Court are: 1) Defendant Mills' Motion for Summary Judgment (doc. 146); and 2) Dallas County Defendants' Motion for Summary Judgment (doc. 142). For the reasons explained below, the Court GRANTS the motions.

### I. Factual and Procedural Background

Bailey is presently incarcerated in the Texas Department of Criminal Justice Correctional Institutions Division in Dayton, Texas. The events giving rise to this lawsuit, however, occurred during his confinement at the Dallas County Jail (the "Jail") from October 22, 2004 through July 15, 2005. (Pl.'s Sec. Am. Compl. ["Compl."] at ¶ 75; Bailey Decl. March 20, 2006, at ¶ 1). Dallas County contracted with the University of Texas Medical Branch ("UTMB") to provide medical services at the Jail. Bailey complains that the medical care he received at the Jail was inadequate. On March 31, 2005, Bailey filed this civil rights lawsuit under 42 U.S.C. § 1983 against various

1

Dallas County Commissioners, UTMB doctors[1], and the Dallas County Sheriff. He later added Dallas County as a Defendant.

Defendant Paul Mills is a UTMB physician that provided medical care to Bailey during his time at the Jail. (Mills's Brief in Supp. Mot. Summ. J. ["Mills MSJ Brief"] at 2). Defendants Mike Cantrell, Maurine Dickey, and Ken Mayfield are all Commissioners of the Dallas County Commissioner's Court (the "Commissioner Defendants"). (Compl. at ¶ 5). Defendant Lupe Valdez is the Sheriff of Dallas County, Texas. (Compl. at ¶ 6). All of the individual Defendants are sued in both their individual and official capacities.

**A.    Dr. Paul Mills**

Bailey alleges that Dr. Mills failed to properly diagnose and/or treat the following conditions and/or maladies with which Bailey claims to be afflicted: hypertension, "tumors" or cysts, Hepatitis C, Hepatitis B, cytomegalovirus, and toxomoplasmosis gondii. On October 22, 2004, the date Bailey was booked into the Jail, he underwent an intake evaluation. (Compl. at ¶ 9; Mills App. in Supp. Mot. Summ. J. ["Mills App."] at 1). The evaluation form indicates that Bailey suffered from Hepatitis C and hypertension and that he had an abscessed wound that was attributed to intravenous drug use. (Mills App. at 1). Bailey's blood pressure was recorded at 113/80, which is considered to be a normal reading. (Mills App. at 1, 31). Soon after his intake evaluation, Bailey received a pneumonia vaccine and antibiotics for the abscess to his hand. (Mills App. at 9, 23-24, 31).

On December 8, 2004, Bailey informed a nurse that he had lumps on his torso. (Mills App. at 29). On December 15, 2004, Dr. Mills evaluated the cysts and concluded that they were benign.

---

[1] Bailey also originally named UTMB Drs. Steven Bowers and Ben Raimer as Defendants. Those Defendants have since been dropped from the case.

(Mills App. at 8). Bailey's medical records indicate that Dr. Mills so informed Bailey. (Mills App. at 19). Chest x-rays confirmed Dr. Mills's findings. (*Id.*). On December 29, 2004, Bailey's blood pressure was recorded at 111/80, a normal reading. (Mills App. at 7, 31).

On January 24, 2005, Dr. Mills again saw Bailey to evaluate two additional cysts that had formed. (Mills App. at 7). Dr. Mills again concluded that these cysts were benign. (*Id.*). A grievance response form dated January 31, 2005 states that Dr. Mills had explained to Bailey twice in great detail that the multiple cysts on his body were not cancerous and that a biopsy was therefore unnecessary. (Mills App. at 18). Dr. Mills again saw Bailey on March 25, 2005 and again concluded that the cysts were benign. (Mills App. at 5).

On May 6, 2005, a dentist treating Bailey noted that Bailey's blood pressure was higher than usual, at 144/100. (Mills App. at 12, 14). The dentist contacted Dr. Mills concerning Bailey's elevated blood pressure (Mills App. at 14); in response, Dr. Mills entered orders for Bailey to receive enalapril maleate, a medication designed to control hypertension. (Mills App. at 22, 27, 31). On May 17, 2005, Bailey complained that he was suffering headaches and blurred vision. (Mills App. at 26). At that time he was taking the enalapril. (*Id.*). His blood pressure on that day was 118/82, a normal reading. (Mills App. at 26). On June 27, 2005, Bailey complained of headaches, nosebleeds, and lightheadedness. (Mills App. at 25). His blood pressure on that day was 104/72. (*Id.*).

On July 5, 2005, Bailey's medical records reflect that his blood pressure was 113/80. (Mills App. at 11). On July 8, 2005[2], Dr. Mills examined Bailey's cysts yet again and referred the matter

---

[2] Bailey contends that his medical records for July 8, 2005 reveal that his blood pressure on that date was elevated at 150/100. (Pl.'s Resp. to Def. Mills's Mot. Summ. J. at 6; App. in Supp. Pl.'s Resp. to Mills's

3

to another Jail physician, Dr. Roy Reid, for a second opinion. (Mills App. at 2, 13). Dr. Reid found that the cysts were "soft" and "mobile" and that they had the "appearance of lipomas", which are fatty tumors that require no medical intervention. (Mills App. at 4, 31); *see* http://www.drkoop.com/ency/93/imagepages/1209.html.

## B.     The Dallas County Defendants

Bailey's claims against the Dallas County Defendants are more generalized. He broadly complains that the Jail failed to provide him adequate dental and medical care and that the Jail's dental and medical facilities were inadequate because, among other things, they were not clean and did not have proper equipment for adequate treatment. Bailey charges that Defendants Cantrell, Mayfield, and Dickey – the County Commissioners – failed "to intervene when they had personal knowledge of the unconstitutional medical conditions at the Dallas County Jail during the time plaintiff was imprisoned there" and that this failure "constitutes cruel and unusual punishment in violation of the Eight Amendment of the U.S. Constitution." (Compl. at ¶ 75). He further complains that these Defendants have "historically underfund[ed] the budget for the Dallas County Jail when they had personal knowledge of serious deficiencies of staff, dental facilities, equipment and services[.]" (Compl. at ¶ 76). Bailey also charges that Sheriff Valdez is responsible for the poor medical care he received while at the Jail because she "fail[ed] to intervene by instituting appropriate policy in regard to the sick call system of medical care access." (Compl. at ¶ 77).

---

Mot. Summ. J. ["Bailey App."] at 17). The relevant portion of Dr. Mills's notes upon which Bailey relies reads as follows: "#3 RLQ, #4 at L ant ribs all about hte [sic] size, i feel no change since last exam in March BP 150/100-after exam, R nostril reddened." (Bailey App. at 17). It is difficult to discern from these notes whether Bailey's 150/100 blood pressure was recorded on July 8, 2005 or in March 2005; however, for purposes of this order the Court will accept Bailey's interpretation that the 150/100 reading was measured on July 8, 2005.

## II. Analysis

**A.     Summary Judgment Legal Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about material facts will preclude the granting of summary judgment. *Id.*

The burden is on the summary judgment movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little*, 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgement is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for

5

the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Because Bailey proceeds *pro se* in this matter, the Court construes the allegations in his complaint and his responsive summary judgment filings with a liberal spirit. *See Sec. & Exch. Comm'n v. AMX, Int'l*, 7 F.3d 71, 75 (5th Cir. 1993).

**B.    Qualified Immunity Legal Standards**

Bailey asserts that the Defendants' failure to provide adequate medical care during his incarceration at the Jail constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.[3] The Individual Defendants have interposed the defense of qualified immunity, which shields government officers performing discretionary functions from the burdens of suit unless their conduct has violated a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The first step in the qualified immunity analysis requires the court to consider whether the facts alleged by the plaintiff, viewed favorably, show that the official's conduct violated a constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 198 n.3 (2004); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Nickleberry v. Johnson*, 146 Fed. Appx. 705, 707 (5th Cir. Aug. 10, 2005). If there is no constitutional violation, the Court's inquiry is at an end. *Saucier*, 533 U.S. at 201. But if a violation is made out, the Court must then determine whether the

---

[3] It is unclear from the record whether Bailey was imprisoned at the Jail pursuant to a conviction or while he was a pretrial detainee, although statements in Bailey's court papers suggests that he was a pretrial detainee. (*See* Decl. of Robert Bailey in Regard to Dental Care and Facilities at ¶ 5). This distinction is technically relevant because the rights of a convicted prisoner spring from the Eighth Amendment's prohibition of cruel and unusual punishment while the rights of a pretrial detainee flow from the procedural and substantive guarantees of the Fourteenth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Practically speaking, however, the distinction is of little moment with respect to inadequate medical care claims, as the states owe the same duty to pretrial detainees under the Due Process Clause that are owed to convicted prisoners under the Eighth Amendment. *See Garcia v. County of El Paso*, 79 Fed. Appx. 667, 669 (5th Cir. Oct. 31, 2003); *Disalvo v. Bowles*, 2001 WL 705782, at *2-3 (N.D. Tex. June 18, 2001).

right was clearly established – that is, whether a reasonable official placed in the circumstances confronted by the defendant would find that the defendant's conduct was unlawful. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).

**C.     Denial of/Inadequate Medical Care Standards**

To establish a violation under either the Eighth or Fourteenth Amendment, Bailey must show that the Defendants were deliberately indifferent to his serious medical needs. *United States v. Gonzales*, 436 F.3d 560, 573 (5th Cir. 2006); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The deliberate indifference standard is difficult to meet. *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (characterizing deliberate indifference as "an extremely high standard"). To prevail on his claims, Bailey must objectively show that he was exposed to a substantial risk of serious harm and that the jail officials "acted or failed to act with deliberate indifference to that risk." *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). The inquiry is subjective; Bailey must show that the jail officials were actually aware of the risk yet consciously disregarded it. *Id.*

**C.     Claims against Dr. Mills in His Individual Capacity**

Bailey alleges that Dr. Mills, a UTMB physician, failed to properly treat his medical conditions. Though inadequate medical care "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Bailey must show that Dr. Mills "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. Simply because an inmate disagrees with type of care he receives does not mean that he can make out a valid § 1983

7

claim. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). The Court will separately examine each of Bailey's complaints to evaluate whether he has set forth sufficient facts to ward off summary judgment.

    *1.    Cysts*

Bailey contends that Dr. Mills should have conducted a biopsy on the cysts that had formed on his body. As recounted in the factual history described above, Dr. Mills evaluated Bailey's cysts on multiple occasions. Each time Dr. Mills concluded that the cysts were benign and were not characteristic of cancer. Dr. Mills contacted another physician, Dr. Reid, for a second opinion, and Dr. Reid confirmed his findings. Additionally, Dr. Mills has submitted an affidavit from Glenda M. Adams, M.D., UTMB's medical director for the Northern Division. Dr. Adams states that skin "lumps and bumps" are common complaints and often increase in number and size as an individual ages. (Mills App. at 31). She also states that individuals who engage in "muscle popping" illicit drugs often develop subcutaneous nodules of scar tissue. (*Id.*). Dr. Adams notes that Bailey's medical records indicate that Bailey admitted that a nodule on his left hand was the result of "muscle shots" of crack cocaine. (Mills App. at 9, 31).

Other than his own speculation, Bailey has offered no summary judgment evidence refuting Dr. Mills's assessment that Bailey's cysts were benign or that Dr. Mills otherwise intentionally disregarded serious medical problems caused by the cysts. "Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension." *Hooper v. Johnson*, 2003 WL 21355, at *5 (N.D. Tex. June 9, 2003) (citing *Varnado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991)).

    *2.    Hypertension*

Bailey further complains that Dr. Mills failed to adequately treat his hypertension despite the fact that Dr. Mills was aware of the condition and that Bailey displayed "classic symptoms". (Compl. at ¶ 44). Bailey's initial intake evaluation form, completed on October 22, 2004, does indicate that he suffered from hypertension. (Mills App. at 1). His blood pressure that day was 113/80, however, which is considered a normal reading. (Mills App. at 1, 31). Bailey's blood pressure was again checked on December 29, 2004 and again registered a normal reading. (Mills App. at 7). On May 6, 2005, Bailey's dentist noted that Bailey's blood pressure had risen to 144/100. (Mills App. at 12, 14). Having been informed of Bailey's elevated blood pressure, Dr. Mills, that same day, entered orders for Bailey to receive enalapril maleate, a medication used to control hypertension. (Mills App. at 27). On May 17, 2005, Bailey's blood pressure had lowered to 118/82, thus suggesting that the medicine prescribed by Dr. Mills was effective. (Mills App. at 26, 30-32). Bailey's blood pressure continued to fall within normal ranges when it was checked on June 27, 2005 (104/72) and July 5, 2005 (113/80). (Mills App. at 2, 25). Although Bailey also contends that the headaches and nosebleeds he was suffering were symptoms of untreated hypertension, these symptoms persisted even after his blood pressure was under control. (Mills App. at 25, 31). According to Dr. Adams, headaches and nosebleeds are common symptoms of methamphetamine and/or cocaine abuse that can persist even after the abuse stops. (Mills App. at 31). Bailey has a documented history of methamphetamine use. (Mills App. at 1).

In short, the summary judgment evidence shows that Bailey's blood pressure was often within normal limits and, when Dr. Mills became aware that his blood pressure had elevated, he immediately prescribed medication which was intended to, and did, lower Bailey's blood pressure. Although Bailey points to various isolated instances where his blood pressure read higher (*see, e.g.*

9

Bailey App. in Supp. Resp. to Mills's Mot. Summ. J. at 42 (138/92 on 3/30/05), 31 (130/96 on 5/11/05), 26 (136/95 on 6/3/05), 17 (150/11 on 7/9/05), he still must show that Dr. Mills acted with subjective deliberate indifference with respect to an excessive risk to his health or safety. That is, Bailey must show that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that harm to occur." *Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001). The Court concludes that Bailey has failed to provide sufficient summary judgment evidence that Dr. Mills actually drew the inference that these blood pressure readings reflected a *substantial* risk of serious harm or that Dr. Mills's response indicated that he subjectively intended that harm to occur. *See Harris v. Gurski*, 2001 WL 1597856, at *6 (N.D. Tex. Dec. 11, 2001). The record simply does not support a finding that Dr. Mills wantonly disregarded Bailey's hypertension.

3.  *Hepatitis C*

Bailey further complains that Dr. Mills did not treat his Hepatitis C condition. (Compl. at ¶¶ 45, 49). In response to this charge, Dr. Mills relies on the testimony of his expert, Dr. Adams. Dr. Adams states that Bailey's medical records indicate that Bailey requested certain homeopathic medications to treat his Hepatitis C that had previously been administered to him by his mother. (Mills App. at 31, 28). According to Dr. Adams, the medications requested by Bailey have not been approved by the Food and Drug Administration and "are not included on the Dallas County Jail formulary or prescribed by UTMB Correctional Managed Care physicians." (Mills App. at 31). Dr. Adams further states that Bailey was not a candidate for FDA-approved anti-viral medications used to treat Hepatitis C during his time at the Jail because of his documented long-term substance abuse

10

and because 18 months are ordinarily required to evaluate and treat Hepatitis C while prisoners routinely remain at the Jail less than that length of time. (Mills App. at 31-32). Bailey, in fact, was at the Jail less than nine months. (Compl. at ¶ 75). Dr. Adams states that interrupted Hepatitis C therapy may cause the development of strains that are resistant to the only two types of medications that are available for treatment of the condition. (Mills App. at 32). Accordingly, she says that treatment therapy is usually deferred until the inmate is either transferred to the prison system or released back into the community.

Bailey's medical records also show that the Jail medical staff did begin steps to monitor his liver function on May 20, 2005. (Mills App. at 10, 32). And Bailey admits that Dr. Mills ordered a liver panel on July 5, 2005, nine months after he was booked into the Jail. (Pl.'s Resp. to Def. Mills's Mot. Summ. J. at 6). Although Bailey complains of the delay, he has not shown that he suffered substantial harm as a result. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Accordingly, Bailey has failed to show that Dr. Mills violated his constitutional rights by failing to treat his Hepatitis C condition.

    *4.*    *Hepatitis B, Cytomegalovirus, and Toxomoplasmosis Gondii*

Bailey also faults Dr. Mills for failing to treat him for Hepatitis B, cytomegalovirus, and toxomoplasmosis gondii. Dr. Adams states that Bailey's test results show that Bailey has been exposed to Hepatitis B in the past but that he is not currently infected with the condition. *See* (Addendum to Adams Aff. at p. 2). Bailey's test results actually show that he is immune to the Hepatitis B virus. *Id.* Dr. Adams further explains that cytomegalovirus and toxoplasmosis are considered "opportunistic" infections that are often associated with Human Immunodeficiency Virus (HIV). *Id.* at 1-2. These types of infections, she says, do not cause disease and do not require

11

treatment except in a situation where a person's immune systems are "severely compromised", as with someone with advanced AIDS. *Id.* at 2. Dr. Adams reports that Bailey's medical records do not indicate that Bailey has a compromised immune system, and Dr. Adams concludes that Bailey does not have toxomoplasmosis and does not have any disease related to his exposure to cytomegalovirus. *Id.* Bailey has failed to offer summary judgment evidence that refutes these findings. He has thus failed to present a genuine fact issue as to whether Dr. Mills was deliberately indifferent to his serious medical needs, and Dr. Mills is accordingly entitled to summary judgment on all claims asserted against him in his individual capacity.

**D.     Claims Against Dr. Mills in his Official Capacity**

Dr. Mills also seeks summary judgment on Bailey's claims to the extent he is being sued in his official capacity. A suit against a government employee in his official capacity is treated as a suit against the government agency itself. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Court thus regards Bailey's official capacity claims against Dr. Mills as being asserted against his employer, the UTMB. The UTMB is considered an agency of the State of Texas. *See Scott v. Pfizer Inc.*, 2006 WL 1488842, at *2 (5th Cir. May 23, 2006). As such, Dr. Mills argues that the UTMB is immune from suit under the Eleventh Amendment. The Eleventh Amendment bars suit in federal court against an unconsenting state, including state agencies or departments. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Accordingly, the UTMB enjoys Eleventh Amendment immunity.

As Dr. Mills recognizes, the Eleventh Amendment does not bar official capacity claims seeking prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123 (1908). While Bailey does assert certain injunctive claims for relief against the UTMB (*See* Compl. at p. 13), those claims are mooted

by the fact that Bailey has been transferred from the Jail to another correctional institution and is no longer, it appears, under Dr. Mills's care. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("The transfer of a prisoner out of an institution often will render his claims for injunctive relief moot."); *Thomas TDCJ-CID #232641 v. Herrera*, 2005 WL 3307528, at *4 (S.D. Tex. Dec. 6, 2005) (plaintiff's request to have doctor prescribe certain medication rendered moot because plaintiff was transferred to another unit); *Kee v. Hasty*, 2004 WL 807071, at *7 (S.D.N.Y. April 14, 2004) ("[A]n incarcerated plaintiff's transfer out of the prison facility at which the cause of action arose moots his claim against that facility, insofar as it seeks injunctive and declaratory relief."). Accordingly, Bailey's claims against Dr. Mills in his official capacity must be dismissed.

### E. Claims Against the County Defendants in Their Individual Capacities

The County Defendants are entitled to summary judgment with respect to Bailey's claims against them in their individual capacities. "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citations omitted). To state a claim under § 1983, a "plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). There is no vicarious liability under § 1983. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1998).

Bailey's Complaint fails to specifically allege how any of the Commissioner Defendants were personally involved in denying him proper medical or dental care or how their actions or omissions caused the constitutional violations of which he complains. Instead, Bailey simply alleges that they

13

were aware of the "unconstitutional" medical conditions at the Jail and had historically underfunded the Jail's budget despite such awareness. (Compl. at ¶¶ 75-76). And while Bailey's summary judgment briefing charges in conclusory fashion that the Commissioner Defendants were personally involved in promulgating policies and customs that have created the inadequate medical care and conditions at the Jail, he has failed to offer any supporting evidence. (*See* Pl.'s Resp. to Defs.' Supp. to Mot. Summ. J. at 4). The Commissioner Defendants are accordingly entitled to summary judgment on the claims asserted against them in their individual capacities.

As for Sheriff Valdez, Bailey simply alleges that she failed "to intervene by instituting appropriate policy in regard to the sick call system of medical care access" and allowed "untrained staff" to operate the sick call request system, thus "promulgat[ing] the customs of her predecessors." (Compl. at ¶ 77). Again, however, Bailey presents no evidence to support his broad-based allegations, nor does he offer any evidence establishing whether, and if so, how, Sheriff Valdez was personally involved in denying him adequate medical and dental care. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Disalvo*, 2001 WL 705782, at *3-4 (granting summary judgment to Sheriff where plaintiff failed to raise fact issue as to Sheriff's personal involvement in denying him medical care). Accordingly, Sheriff Valdez is entitled to summary judgment in her individual capacity.

F.   **Claims against the County Defendants in Their Official Capacities**

In the Court's September 29, 2005 Scheduling Order, the Court informed the parties that it was utilizing a phased case management approach in this case. The first phase focused on the individual capacity claims lodged against the individual Defendants, to which the qualified immunity defense applied. Although, for the reasons stated above, Bailey's individual capacity claims against

the County Defendants must fail, the Court recognizes that Bailey has also sued each of the County Defendants in their official capacities as well as Dallas County itself. The official capacity claims actually lie against Dallas County and are not subject to the qualified immunity defense. *See Barrett v. Kocher*, 2004 WL 241709, at *1 (N.D. Tex. Feb. 10, 2004). The second phase of this case, then, will proceed solely against Dallas County. By separate order the Court will enter an appropriate schedule to govern the disposition of the second phase of this case.

### III. Conclusion

For the reasons stated above, the Court GRANTS Defendant Mills's Motion for Summary Judgment (doc. 146) and the Dallas County Defendants' Motion for Summary Judgment (doc. 142). In light of these rulings, the Dallas County Defendants' Motion for Judgment on the Pleadings (doc. 112) is DENIED as moot.

**SO ORDERED.**

**SIGNED June 13, 2006**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE